UNITED STATES DISTRICT COURT

For the

Eastern District of Arkansas

COMPLAINT

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 29 2024

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

| | |
|---|---|
| Ron Davis, Plaintiff, individually Pro Se; Ron Davis Doing Business As (DBA) a CMS 1696 Medicare Beneficiary and citizen of the USA, PLAINTIFF ) ) ) ) ) | |
| V. ) | Case #: 4:24cv933-KGB |
| Xavier Becerra, in his official capacity as Secretary of the US Department of Health and Human Services (HHS), Doing Business as (DBA) Centers for Medicare and Medicare Services (CMS); Medicare Appeals Board (MAB); Medicare Appeals Council (MAC); Departmental Appeals Board (DAB); Medicare Approved Contractors (MACs); C2C Administrators (Q2); Qualified Independent Contractors (QIC); First Coast Service Options (FCSO); et al affiliated CMS carrier collaborating contractors. DEFENDANT ) ) ) ) ) ) ) ) ) ) ) ) ) | |

1)  Plaintiff's Address:   Ron Davis, Individual (Pro Se)

    311 Bobwhite Road

    Lonoke, AR 72086                    This case assigned to District Judge Baker

    Ph: 501-843-4380                    and to Magistrate Judge Volpe

    (See Plaintiff's Contact List Exhibit A, Attachment Item 8, page 33-34)


2)  Defendant's Address: Xavier Becerra

    Department of Health and Human Services (HHS)

    Cohen Building, Room G-644

    300 Independence Avenue, SW

Washington, DC 20024

Ph: 202-565-0237

(See Plaintiff's Contact List Exhibit A, Attachment Item 8, page 35)

## JURISDICTION

3) The United States District Court Eastern District of Arkansas does have jurisdiction over this case. The plaintiff lives in Lonoke County, Arkansas. The defendant is the federal government, HHS its agencies, and contractors.

## NATURE OF CLAIM

4) Call for Constitutional redress, First Amendment, Due Process 5th and 14th Amendments; and court's review in conjunction with 42 CFR 405.1110(d) – 42 CFR 423. 2110(d) (1-5); 42 CFR 405.990(2); 5 US Code 706(1)(D).

5) HHS Medicare Appeals Council (MAC); Departmental Appeals Board (DAB); and Medicare Appeals Board (MAB) have failed to act timely on the Q2 Administrators' referral for a MAC/MAB own motion review made 4/21/23, this with the provider's reimbursement claims stayed by the Q2, without authority over the provider's Clinical Trial Policy (CTP) National Clinical Trial (NCT) services or claims (See National Coverage Determination (NCD) 310.1, Exhibit A, Item 12, Page 64-70 specifically 68(*).

Nature and Amount of Relief Claimed: Plaintiff is requesting the Court to order the effectuation of ALJ Satterwhite's fully favorable decision, issued at Medicare Hearings and Appeals in OMHA Appeal # 3-1003415126 dated 2/27/2023 (See Attachment A, Item 11, pages 40-63), which was referred by the Q2 to the MAB on 4/21/2023 for the MAB's own motion review (See Attachment A, Item 13, pages 71-72).

which they (the MAB) then failed to dismiss, reverse or remand back to the ALJ as is required, no later than 95 days after their receipt of the referral. The MAB in fact no longer has the authority to hear or respond to this issue as of the date this Complaint ripened, which was on 7/26/2023, 95 days after the Q2 referral and/or (with grace by 8/21/2023), 95 days from the Plaintiff's response to the referral was mailed.

6) Factual Basis of Claim: ALJ Satterwhite found favorable in OMHA Appeal # 3-1003415126 holding for the use of Pain DX Small Pain Fiber (spf) Nerve Conduction Study (NCT) AXON-II® (CPT Code 95909) testing as a fully payable event.

## CALL FOR ALL RECORDS REGARDING US ALJ APPEAL # 3-10034151256

7) All records held at the Q2 Administrators office located at 300 Arbor Drive, Suite 1350, Columbia, SC 29223-4582, the QIC, located at PO Box 45120, Jacksonville, FL, the HHS Medicare Appeals Board, and/or council to include the CMS Chief Clinical Officer located in the Cohen Building, Room G-644, 300 Independence Avenue SW, Washington DC 20024 regarding these matters should now be brought forward for the Court's review in this case, with copies to be delivered to the Pro Se Plaintiff, Ron Davis, at 311 Bobwhite Road, Lonoke, AR 72086.

8) As can be seen in the Ron Davis rebuttal to the Q2 referral/beneficiary notice by affidavit (Exhibit 10A, now attached as Exhibit A, Item 1, page 4) the minimum dollar amount due requirement of $1840.00 for the Court's review has been met, now with interest due to the provider at 12% from 3/27/2023.

9) I am respectfully requesting serious consideration by the Court to also regard this complaint as a referral for the Court's own motion review, and for 3 times punitive damages when considering that any authority for the (C2C) Administrators' (Q2) referral, at best, was dubious. Along with the fact that it is the Q2's primary responsibility is to inform all first-level CMS Medicare Approved Contractors (MACs) such as First Coast Service Options (FCSO) and the second-level Qualified Independent Contractors (QIC) North and South, not only of all QIC favorable findings regarding first-level reversals but as well all US ALJ favorable decisions regarding reversed second-level QIC decisions, this in order to avoid REPETITIVE ISSUES - COSTLY APPEALS and hopefully to create a correct consistency in all 2nd level QIC appeal decisions, which as is evident herein, they have failed miserably to do.

10) Please see Davis Exhibit A Attachment Item 2, known specifically as past favorable decisions issued by the QIC and all ALJ decisions regarding the NeuralScan/AXON-II® small pain fiber (spf) Nerve Conduction Study (NCS) testing services performed both before and after the AASEM/National Institute of Health (NIH) registration of NCT #01979367 by the National Library of Medicine (NLM) which occurred in November of 2013, with an effective date of March 2012.

11) Noting here that NCT #01979367 was issued after being sponsored by the AASEM (a nationally recognized society with over 900 physician members at that time) as a Physician's Clinical Trial Policy (CTP) action in 2013 with an effective date of March 2012. It was submitted through the National Library of Medicine (NLM). The NLM then posted the CTP trial NCT# 01979367 for public view at www.clinicaltrials.gov, this on behalf of the National Institute of Health (NIH) (See Exhibit A, Item 3, pages 16-23).

12)     The registration was made under the Center of Medicare and Medicaid Services (CMS) National Coverage Determination Policy (NCD) 310.1. NCT #01979367 is an ongoing CTP study but due to CMS contractors' malicious pursuits, active but no longer accepting participants (See National Library of Medicine (NLM), National Clinical Trial (NCT) # 01979367 study details in Exhibit A Attachment Item 3 pages, 16-23). Please see Exhibit Y again now attached herein as Exhibit A, Item 2, pages 5-15 is a listing of most, if not all QIC and ALJ decisions issued regarding both neuropathy and lower extremity circulatory services rendered by AASEM members, prior to and from the registration of NCT #01979367 in November of 2013. Note, there are four unfavorable ALJ decisions, all still waiting on the MAC/MAB for an appeal. There are 8 favorable QIC decisions, 6 regarding CPT codes 95903/95904 and 95909, Nerve Conduction Testing (NCT) with PainDX equipment, as well as confirming the AASEM CTP-NLM registration as a valid study. Certification of qualifications by the AASEM to perform NCT Spf testing was approved by the QIC, noting here that QIC Decisions should be made both correctly and consistently, please see Exhibit A, Item 4 Page 25. It is a fully favorable decision by U.S. ALJ Bennett S. Engelman, attached hereto in full. Specifically, please see page 24, where Judge Engelman states: *"Further, contrary to the assertion of the MAC/MAB that other favorable QIC decisions lack precedential value is flawed, when the same physician provides the same treatments at the same or similar frequency and the same LCD (L-28240) is used, the same decision should be reached. In other words, the QIC findings should be consistent."*

13)     Further in Exhibit A, Item 2 there are 28 U.S. ALJ decisions. Two more since Exhibit A, Item 2, pages 5-15 were produced, again with a total of four unfavorable, still waiting appeal, the remaining 26 are all favorable, of which 12 are issued favorable solely for the use of PainDX equipment for spf-NCT nerve conduction testing; CPT codes 95903/95904/95909. Five were issued prior to the registration

of the AASEM study and seven after November 2013, with the last two favorable, which were issued in 2022/2023. All of which Frank A. DelliCarpini, Chief Medical Director of the QIC, its mother company the Q2 and Ms. Holshouser knew or should have known about prior to their (provider payment stayed) referral to the MAC/MAB for the MAB's own motion review dated 4/21/2023 of Judge Satterwhite's full favorable Pain DX/AXON-II® testing decision dated 2/22/2023 was made.

### AGAIN

14) The HHS (MAC/MAB) is yet to act upon the Q2's referral. The lack of review by the MAC/MAB is the issue that has brought this action to the Court under 42CFR 405.1110(d) and now 42 CFR 423.2110(d) (Council Action 1-5), where I am now respectfully requesting that the Court orders and affirms ALJ Satterwhite's fully favorable decision in OMHA appeal #3-1003415126 approving the AXON-II® (spf – NCS) testing CPT code 95909 to be fully effectuated as the final decision of the HHS Secretary, MAC/MAB/DAB/ Q2/QIC, and all other CMS MAC contractors (to include FCSO), then for the case to be closed with prejudice.

### CONCLUDING

15) Again, with the Court's review of Exhibit A, Davis affidavit, and attachments, that the Q2 Administrator Linda C. Holshouser and the FCSO/QIC Chief Medical Director Frank A. DelliCarpini both independently, jointly and severally along with the other entities owned by Blue Cross Blue Shield (BCBS), which they both downstream do work for, be held liable for any and all CMS Contractor 1st and 2nd level QIC unfavorable decisions, made either in the past or future, which are found to be a part of a contractor consortium, described here as a monopoly under the Sherman Anti-Trust and Clayton Acts,

and/or in violation of 2010 US Code Title 18, Chapter 63 Mail Fraud and other offenses, defined more specifically in Section 1346 as a scheme or artifice to defraud, to pay all those to be found to have been violated, with interest at 12%, plus three times punitive damage for participating in a monopoly and the carrier contractors' mail fraud scheme, using LCDs to deprive another of the intangible right of an honest service. (See Davis Affidavit Exhibit A Item 5, page 27)

16. I am asking the Court for CMS 1696 costs, witness fees, attorney fees, court and service costs, as well as any other items the Court may deem reasonable for the defendant and/or their BCBS collaborating contractors to be held liable for.

RESPECTFULLY SUBMITTED

_____  10-26-2024

By: Ron Davis, Pro Se

311 Bobwhite Road

Lonoke, AR 72086

Ph:   501-843-4380

Fax:  501-690-4028

Email: rondavis2227@gmail.com

## SUMMONS AND NOTICE TO DEFENDANT

You are hereby warned to file a written answer with the clerk of the court within 60 days after the date that you received this complaint and to send a copy to the cross plaintiff and to his attorney. If you do not file an answer within 60 days, or if you fail to file an answer, a default judgment may be entered against you.

_____

[Signature of Clerk or Judge]